United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 16, 2006**

Charles R. Fulbruge III
Clerk

REVISED JANUARY 20, 2006

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 04-20992
_____

CENTERPOINT ENERGY HOUSTON ELECTRIC LLC; CENTERPOINT ENERGY ENTEX,
an Unincorporated Division of Centerpoint Energy Resources Corp.,

Plaintiffs - Appellees-Cross-Appellants,

versus

HARRIS COUNTY TOLL ROAD AUTHORITY; HARRIS COUNTY,

Defendants - Appellants-Cross-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Texas
_____

Before JOLLY and BARKSDALE, Circuit Judges, and LITTLE, District
Judge.[1]

E. GRADY JOLLY, Circuit Judge:

This appeal raises the question whether CenterPoint Energy
Houston Electric and CenterPoint Energy Entex [collectively
"CenterPoint"] may collect from Harris County Toll Road Authority
and Harris County [collectively "Harris County"] costs of
relocating their utility facilities when Harris County constructed
the Westpark Tollway along the pre-existing Westpark Drive in
Houston, Texas. CenterPoint also seeks to collect attorney's fees
and prejudgment interest. We hold that § 251.102 of the Texas

_____

[1] District Judge of the Western District of Louisiana,
sitting by designation.

Transportation Code requires reimbursement of CenterPoint's relocation costs, and that the district court failed to provide reasoning sufficient for review of the denial of attorney's fees or prejudgment interest. Thus, we AFFIRM the district court's grant of summary judgment for CenterPoint awarding its relocation costs, VACATE the denial of attorney's fees and prejudgment interest, and REMAND for proceedings not inconsistent with this opinion.

I

The material facts are undisputed. CenterPoint is a utility provider servicing the City of Houston under a franchise agreement originally executed in 1957. CenterPoint has no such agreement with Harris County. CenterPoint maintains electric and gas facilities within the rights-of-way of Houston's city streets, including Westpark Drive, now the Westpark Tollway. CenterPoint has no easement rights in the property.

In June 2001, Harris County began constructing the Westpark Tollway. The construction of the Tollway required CenterPoint to relocate gas and electric utilities at a cost of over ten (10) million dollars.[2] All of the relocated facilities are within the City of Houston. CenterPoint requested the relocation costs from Harris County both before and after the relocation. Harris County refused payment and this suit followed.

---

[2] CenterPoint Energy Entex's total relocation expenses were $4,266,901.06. CenterPoint Energy Houston Electric, L.L.C's total relocation expenses were $5,989,772.91.

Based on CenterPoint's claims under both the United States and Texas Constitutions, the action was removed to federal court based on 28 U.S.C. §§ 1331 and 1367.  The parties agreed that there were no material issues of fact, and accordingly submitted cross-motions for summary judgment.  The district court denied Harris County's motion for summary judgment and granted summary judgment for CenterPoint, holding that §§ 251.101 and 251.102 of the Texas Transportation Code required Harris County to reimburse CenterPoint's relocation costs in the amounts of $5,989,772.91 and $4,266,901.06, respectively, to CenterPoint Energy Houston Electric and CenterPoint Energy Entex.  The court ordered postjudgment interest of 2.53% per annum.  Both parties appealed: Harris County appealed the judgment; CenterPoint appealed the district court's denial of attorney's fees and prejudgment interest.

II

We review the grant or denial of a motion for summary judgment de novo, respecting the same legal standards that the district court applied to determine whether summary judgment was appropriate.  Lamar Adver. Co. v. Cont'l Cas. Co., 396 F.3d 654, 659 (5th Cir. 2005) (citations omitted).  A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the evidence presented demonstrates "no genuine issue as to any material fact and that the

3

moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

A

The primary issue presented is whether a Texas utility or the county government must bear utility relocation costs caused by county road construction. The "long-established common law principle [requires] that a utility forced to relocate from a public right-of-way must do so at its own expense." Norfolk Redevelopment & Housing Auth. v. Chesapeake & Potomac Tel. Co. of Va., 464 U.S. 30, 34 (1983). Texas has adopted a similar rule concluding that, because "the main purposes of roads and streets are for travel and transportation . . . [,] it is clear that [utilities may] be required to remove at their own expense any installations owned by them and located in public rights of way whenever such relocation is made necessary by highway improvements." State v. City of Austin, 331 S.W.2d 737, 741 (Tex. 1960). See also Benbrook Water & Sewer Auth. v. City of Benbrook, 653 S.W.2d 320, 323-24 (Tex. App. 1983); City of Grand Prairie v. City of Irving, 441 S.W.2d 270, 273 (Tex. Civ. App. 1969); City of Grand Prairie v. Am. Tel. & Tel. Co., 405 F.2d 1144, 1146 (5th Cir. 1969) (all holding as a general rule that utilities can be required to relocate from the public right-of-way at their own expense, and that such rule has been adopted by the state of Texas).[3] When

_____

[3] The general rule is altered where the utility required to relocate holds an ownership interest, such as an easement in the

4

applying this rule, "[t]here is no material difference . . . between a utility company and a municipal corporation." <u>City of Austin</u>, 331 S.W.2d at 741. Thus, if this appeal were determined by common law principles, CenterPoint would be required to bear its own relocation costs. The common law, however, controls only where there is no conflicting or controlling statutory law. <u>See</u>, <u>e.g.</u>, <u>Taylor v. Leonard</u>, 275 S.W. 134 (Tex. Civ. App. 1925); 15 Am. Jur. 2d <u>Common Law</u> § 1 (2005); 67 Tex. Jur. 3d <u>Statutes</u> § 3 (2005). We thus turn to examine the applicable statutes.

B

CenterPoint correctly contends that §§ 251.101 and 251.102 of the Texas Transportation Code apply in this case.[4] Section

---

property from which the utility facilities were relocated. <u>See</u>, <u>e.g.</u>, <u>City of Grand Prairie</u>, 405 F.2d at 1146 (holding that where the utility facilities were located in a "private easement . . . the general rule . . . has no application") (citing <u>Magnolia Pipe Line Co. v. City of Tyler</u>, 348 S.W.2d 537 (Tex. Civ. App. 1961)). However, CenterPoint has no tangible property rights in the land from which it was required to move its utility facilities.

[4] Harris County contends that the general law of the Transportation Code has essentially been trumped by the Harris County Road Law [the Road Law] and the accompanying rules promulgated by Harris County. The Road Law is a state legislative act that provides a mechanism by which counties can acquire property and construct roadways. Harris County argues that it was by this mechanism, not by the process of § 251.101, that it acquired the right-of-way. Because the rules promulgated by Harris County under the authority of the Road Law require utilities to bear relocation costs, Harris County argues that the district court erred in denying its motion for summary judgment. Assuming without deciding that the Road Law applies to property within the City of Houston, we find the arguments of Harris County unpersuasive. <u>See</u> <u>Piney Point Village v. Harris County</u>, 479 S.W.2d 358, 364 (Tex. Civ. App. 1972)(finding that the situation before the court involved only property outside the municipal limits of Houston and

5

251.101 provides a means for counties to acquire property to build or improve roadways.  As a part of that process, § 251.102 mandates that "[a] county shall include the cost of relocating or adjusting an eligible utility facility in the expense of right of way

declining to determine if the Road Law would apply to property within the City).

We do not dispute that the Harris County Road Law is a "special" law enacted by the Texas Legislature, see, e.g., id. at 364 (recognizing the Harris County Road Law as a "special act"), nor do we take issue with the general principle that special acts or provisions prevail over general ones in certain instances where they are in conflict.  See, e.g., TEX. GOV'T. CODE ANN. § 311.026(b) (2005).  Instead, we hold that any alleged conflict between the Texas Transportation Code and the Harris County Road Law can be harmonized.

Section 311.026 of the Texas Government Code, supplying the rules of interpretation for Texas statutes, states that general and specific statutes "shall be construed, if possible, so that effect is given to both."  It is only where the conflict is "irreconcilable" that the specific provision trumps the general one.  TEX. GOV'T CODE § 311.026(b).  As to cost allocation, there is no such conflict.  While the Road Law provides a mechanism for counties to acquire property for road construction, it is does not speak to who bears the relocation costs incurred.  Thus, construing together the Transportation Code and the Road Law, § 251.102, requiring the county to bear the relocation costs, is unaffected.

Conflict with the cost-allocation provision of § 251.102 arises only when "The Rules of Harris County, Texas For the Construction of Facilities Within Harris County Road Rights-of-Way" (promulgated by Harris County shortly before it began construction on the Westpark Tollway in 2001) are considered. Section 8 provides in part that utilities forced to relocate facilities in a right-of-way must "bear the cost and expense of any change or alteration." CenterPoint correctly challenges the validity of this County Rule. The rule is in conflict with § 251.102 of the Texas Transportation Code.  As such it appears invalid.  Even were the rule valid, Harris County has provided no authority demonstrating that a rule or regulation promulgated by a county prevails over a general state statute where they are in conflict.  Nor has it demonstrated that § 33 of the Harris County Road Law extends to cover county rules promulgated under the Road Law.

6

acquisition." TEX. TRANSP. CODE ANN. § 251.102 (2005). As we are clearly dealing with a "cost of relocating" resulting from the "acqui[sition of] . . . a right-of-way,"[5] the question is whether CenterPoint is an "eligible utility facility" within the meaning of § 251.102.

Section 251 of the Transportation Code itself does not provide any guidance as to the meaning of "eligible utility facility." Still we are required to "search out carefully the intendment of a statute, giving full effect to all of its terms." Tex. Highway Comm'n. v. El Paso Bldg. & Const. Trades Council, 234 S.W.2d 857, 863 (Tex. 1951); see Bd. of Adjustment v. Wende, 92 S.W.3d 424, 432

---

[5] Harris County argued on appeal that, based on authority granted to it by the Harris County Road Law, it merely assumed an existing right-of-way from the City of Houston, and did not "acquire" it as articulated by §§ 251.101 and 251.102. We find no indication that this argument was presented to the district court. Indeed the district court stated that "[n]either party disputes that Centerpoint had to relocate its facilities on Westpark Drive only after the defendant acquired the City's right of way." As we have often pointed out, "[w]e are a court of errors, and . . . a district court cannot have erred as to arguments not presented to it." Miller v. Nationwide Life Ins. Co., 391 F.3d 698, 701 (5th Cir. 2004) (citations omitted). Accordingly the argument is forfeited by the failure to raise it in the court below and is reviewed here only for plain error. See Crawford v. Falcon Drilling Co., 131 F.3d 1120, 1123 (5th Cir. 1997) ("more recently our Court has adopted the practice of reviewing unpreserved error in a civil case using the plain-error standard of review").

Under any standard of review, the argument that the property has not been acquired within the meaning of § 251.101 is without merit. Harris County clearly exercised some sort of process or authority that passed control or ownership over the rights-of-way at issue from the City of Houston to Harris County. Thus Harris County "acquire[d] . . . a right-of-way" within the meaning of § 251.101.

7

(Tex. 2002) (Courts "must attempt to give effect to every word and phrase if it is reasonable to do so."). To give full meaning to the modifier "eligible", we turn, to the traditional tools of statutory interpretation.

C

"The primary rule in statutory interpretation is that a court must look to the intent of the legislature and must construe the statute so as to give effect to that intent." Union Bankers Ins. Co. v. Shelton, 889 S.W.2d 278, 280 (Tex. 1994) (citations omitted); see also Crimmins v. Lowry, 691 S.W.2d 582, 585 (Tex. 1985) ("A fundamental rule controlling the construction of a statute is to determine, if possible, the intent of the legislature as expressed in the language of that statute."). To determine the intent of the legislature, ordinarily we first look to the words of the statute itself. See Hightower v. Texas Hosp. Ass'n., 65 F.3d 443, 448 (5th Cir. 1995) ("When courts interpret statutes, the initial inquiry is the language of the statute itself."). However, we have examined the statute, as noted above, and find that the words "eligible utility facility" remain ambiguous. If intent cannot be determined from the words of the text we look to other sources. In this case, those sources have been identified for us in § 311.023 of the Texas Government Code, as discussed infra.

It is important as background to our analysis to understand that Texas has been in the process of, and is currently nearing the end of a general recodification of its laws. See Legal Research

Guides, Texas Statutes and Regulations, http://library.law.smu.edu/resguide/TX-STATS.htm (last visited Nov. 22, 2005). This fact is relevant because in 1995, the Texas Legislature passed Senate Bill 971, "The Texas Transportation Act" [Transportation Act], which completed the recodification of Texas law relating to transportation. The Transportation Act created the Texas Transportation Code which includes the current §§ 251.101 and 251.102.[6] See 1995 Tex. Sess. Law Serv. Chpt. 165 (S.B. 971) (West) (now codified at TEX. TRANSP. CODE ANN. § 1.001, et. seq.). The purpose of the Transportation Act was to provide a cogent and

---

[6] The current version of each section is as follows:

> 251.101. Condemnation for County Road in Municipality
>
> (a) A county may exercise the power of eminent domain in a municipality with the prior consent of the governing body of the municipality to condemn and acquire real property, a right-of-way, or an easement in public or private real property that the commissioners court determines is necessary or convenient to any road that forms or will form a connecting link in the county road system or in a state highway.
>
> . . .
>
> 251.102. Cost of Relocating or Adjusting Utility Facility
>
> A county shall include the cost of relocating or adjusting an eligible utility facility in the expense of right-of-way acquisition.

TEX. TRANSP. CODE ANN. §§ 251.101, 251.102 (2005).

organized codification of Texas Transportation law -- not to create

substantive changes in the law.[7]

The Transportation Act gives specific instructions relating to

its interpretation.  Section 1.002 of the Transportation Act, now

codified in the Transportation Code, provides that "Chapter 311,

Government   Code   (Code   Construction   Act),   applies   to   the

construction of each provision in this code except as otherwise

---

[7] Specifically the Transportation Act provides in section
1.001 that the purpose of the Transportation Act is as follows:

> Sec. 1.001. PURPOSE OF THE ACT
>
> (a) This code is enacted as a part of the
> state's continuing statutory revision program,
> begun by the Texas Legislative Council in 1963
> as directed by the legislature in the law
> codified as Section 323.007, Government Code.
> The program contemplates a topic-by-topic
> revision of the state's general and permanent
> statute law without substantive change.
>
> (b) Consistent with the objectives of the
> statutory revision program, the purpose of
> this code is to make the law encompassed by
> this code more accessible and understandable
> by:
>
> (1) rearranging the statutes into a more
> logical order;
>
> (2) employing a format and numbering system
> designed to facilitate citation of the law and
> to accommodate future expansion of the law;
>
> (3) eliminating repealed, duplicative,
> unconstitutional, expired, executed, and other
> ineffective provisions; and
>
> (4) restating the law in modern American
> English to the greatest extent possible.

expressly provided." TEX. TRANSP. CODE ANN. § 1.002 (2005). Because § 251.102 does not "expressly provide[] otherwise" we will look to chapter 311 of the Texas Government Code for interpretive aids.

Section 311.023 of the Texas Government Code provides a list of "construction aids" to be used "[i]n construing a statute, whether or not the statute is considered ambiguous on its face." TEX. GOV'T. CODE ANN. § 311.023 (2005).[8] Two aids are particularly pertinent here -- first, "the "title (caption), preamble, and emergency provision"; and second "former statutory provisions, including laws on the same or similar subjects." Id. Each will be considered in turn.

_____

[8] Section 311.023 provides:

> In construing a statute . . . a court may consider among other matters the:
>
> (1) object sought to be attained;
>
> (2) circumstances under which the statute was enacted;
>
> (3) legislative history;
>
> (4) common law or former statutory provisions, including laws on the same or similar subjects;
>
> (5) consequences of a particular construction;
>
> (6) administrative construction of the statute; and
>
> (7) title (caption), preamble, and emergency provision.

TEX. GOV'T CODE ANN. § 311.023 (2005).

11

(1)

We examine first the "title" and "preamble." The Transportation Act provides that as a part of the "[t]he [general statutory revision] program," it "contemplates a topic-by-topic revision of the state's general and permanent statute law without substantive change". See 1995 Tex. Sess. Law Serv. Chpt. 165, § 1.001(a) (S.B. 971) (West) (now codified at TEX. TRANSP. CODE ANN. § 1.001(a)). Specifically the Transportation Act is "[a]n Act relating to the adoption of a nonsubstantive revision of statutes relating to transportation." Id. at preamble (emphasis added). Because the Transportation Act was not intended to create a substantive change in the law, we must conclude that §§ 251.101 and 251.102 retain their meaning before codification.

We turn now to the second construction aid -- "former statutory provisions, including laws on the same or similar subjects" to discern the meaning of "eligible utility facility."

(2)

The pre-codification versions of §§ 251.101 and 251.102 of the Transportation Code were Texas Civil Statute Articles 6674n-3 and 6702-1. See TEX. TRANSP. CODE ANN. §§ 251.101, 251.102, Historical and Statutory Notes (2005). One of these provisions, article 6674n-3, provides definition to the phrase "eligible utility

12

facility" and the other, article 6702-1, applies that phrase in the context of county acquisitions.[9]

Our first step in determining the meaning of "eligible" is to examine its use in article 6674n-3 entitled "Costs of relocating or adjusting eligible utility facilities in acquisition of rights-of-way". TEX. CIV. STAT. art. 6674n-3 (1994). Although that provision addressed acquisitions by the Texas Highway Department, the provision gives meaning to the phrase "eligible utility facilities" in the context of the relocation of utility facilities for roadway projects. The provision states: "In the acquisition of all highway rights-of-way by or for the Texas Highway Department, the cost of relocating or adjusting utility facilities which cost may be eligible under the law is hereby declared to be an expense and cost of right-of-way acquisition." TEX. CIV. STAT. art. 6674n-3, § 1. Thus, in article 6674n-3, the title and text combine to provide that "eligible" describes a utility that incurs a relocation cost as a result of a highway acquisition (by the Texas Highway Department), which cost is eligible under the law for reimbursement. Although this reasoning is still circular, we do understand that "eligible" is a modifier of "cost". And, although the statute is in reference to acquisition by the Texas Highway

---

[9] The interconnection of these former statutes is further evidenced by the legislative reference to both article 6674n-3 and article 6702-1 as the prior basis for the current § 251.102 of the Transportation Code. See TEX. TRANSP. CODE ANN. § 251.102, Historical and Statutory Notes, Prior Laws.

Department, when the acquisition of the right of way here was by the county, the use of the same term in article 6702-1 gives meaning to the phrase in the context of this case.

Article 6702-1 of the same title states:  "The county should include the cost of relocating or adjusting eligible utility facilities in the expense of right-of-way acquisition."  TEX. CIV. STAT. art. 6702-1 § 4.303 (1994). We can only conclude that the Texas Legislature intended the term "eligible utility facilities" to be interpreted and applied consistently in each of its uses in the title.  See Dallas County Cmty. College Dist. v. Bolton, ___ S.W.3d ___, 2005 WL 3241846 (Tex. 2005) ("We must interpret a statute according to its terms, giving meaning to the language consistent with other provisions in the statute."); McIntire v. Ramirez, 109 S.W.3d 741, 745 (Tex. 2003) ("[W]e will not give an undefined statutory term a meaning that is out of harmony or inconsistent with other provisions in the statute"); Barr v. Bernhard, 562 S.W.2d 844, 849 (Tex. 1978) ("[O]ne provision will not be given a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such a construction if standing alone.").  Consequently, the meaning of the term used in both article 6702-1 and article 6674n-3 is the same.[10]  Thus,

---

[10] The Texas Civil Statutes Article 6702-1 §§ 4.302, 4.303 provided:

> Section 4.302 (a) The right of eminent domain within the boundaries of a municipality with prior consent of the governing body of the

14

where a utility facility incurs relocation costs resulting from a "county acqui[sition of] real property," through the process outlined in article 6702-1 §4.302, <u>and</u> those relocation costs are "eligible under the law," that utility is an "eligible utility facility" due county reimbursement. <u>See</u> TEX. CIV. STAT. art. 6702-1, §§ 4.302, 4.303 (1994).

D

We have thus determined that §§ 251.101 and 251.102 were intended to retain the same meaning of "eligible utility facilities" as in the pre-codified statute.[11] Additionally we have

_____

> municipality is conferred on counties of the state for the purpose of condemning and acquiring land, right-of-way, or easement in land, private or public, except property used for cemetery purposes, where the land, right-of-way, or easement is in the judgment of the commissioners court of the county necessary or convenient to any road that forms or will form a connecting link in the county road system or a connecting link in a state highway.
>
> .   .   .   .
>
> Sec. 4.303. The county should include the cost of relocating or adjusting eligible utility facilities in the expense of right-of-way acquisition.

These provisions were repealed and replaced by §§ 251.101 and 251.102 of the Texas Transportation Code.

[11] Harris County offers its own suggestions as to the meaning of "eligible utility facilities" within the context of § 251.102. Instead of looking to the history and development of § 251.102, Harris County directs the court to a smattering of other provisions located in other portions of the code as possible definitions. Harris County has presented no cogent connection between any of these proposed provisions and the context at hand.

15

concluded that the term "eligible utility facility" refers to a utility incurring relocation costs that are "eligible under the law" for reimbursement. We turn now to consider whether the costs incurred by CenterPoint are such costs, that is to say, whether CenterPoint is an "eligible utility facility" within the meaning of § 251.102.

(1)

The first requirement of § 251.102 is that the cost claimed for reimbursement must have resulted from a county acquisition of rights-of-way for highway construction. This requirement is satisfied. Section 251.101 authorizes a county to "exercise the power of eminent domain in a municipality . . . to condemn and acquire real property, a right-of-way, or an easement in public or private property . . . necessary or convenient to any road that forms or will form a connecting link in the county road system." TEX. TRANSP. CODE ANN. § 251.101. Although Harris County contends otherwise, its activity falls squarely within this statutory provision: it acquired the rights-of-way along Westpark Drive needed to construct the Westpark Tollway, a road that Harris County admits is a "connecting link" between the City of Houston and the surrounding county. See supra note 5. The parties do not dispute that the construction of the Westpark Tollway on the rights-of-way of the former Westpark Drive necessitated the relocation of CenterPoint's utility facilities. Thus CenterPoint satisfies the

16

requirement of § 251.102 as having incurred costs resulting from a county acquisition for highway construction.

(2)

The second requirement under § 251.102 is that the costs incurred must be "eligible under the law."  To give contextual meaning to these words, we look to the Texas Supreme Court and the case of State v. City of Austin, 331 S.W.2d 737 (Tex. 1960).[12]  In City of Austin, the Texas Supreme Court addressed the validity of a statute requiring similar repayment of relocation costs to a utility.[13]  Although City of Austin addresses the validity of a legislative mandate that the state repay a utility's relocation costs, the focus of the court's analysis was on the constitutional limitations of public reimbursement of relocation costs to private utilities.  As such we find no reason in law or fact to restrict the principle of its holding to the state's obligation;

_____

[12] City of Austin is the foundational case recognizing the common-law rule that utilities must bear their own relocation costs and examining the validity of statutes that create an exception. See City of Austin, 331 S.W.2d 737; see also Benbrook Water & Sewer Auth., 653 S.W.2d at 323;  City of Grand Prairie, 405 F.2d at 1146 (both recognizing City of Austin as the "leading" and "foundational" case in this area).

[13] Specifically, the court in City of Austin examined Article 6674w-4 of the Texas Civil Statutes which provided, "[t]he relocation of utility facilities necessitated by the improvement of highways established as part of the National System of Interstate and Defense Highways shall be made by the utility at the cost and expense of the state provided such is eligible for Federal participation." See City of Austin, 331 S.W.2d at 740.  The state brought a declaratory action seeking to have the reimbursement of relocation costs by government entities declared in violation of the Texas Constitution.

17

consequently, the case is determinative of costs "eligible under the law" for purposes of § 251.102 of the Transportation Code.

The petitioner in City of Austin, the State of Texas, sought declaratory relief regarding the payment of relocation costs incurred by a private utility. See City of Austin, 331 S.W.2d at 740-42. The petitioner contended that the state's reimbursement to a private utility constituted an illegal payment of public funds to a private entity in violation of the Texas Constitution. Id. In denying relief to the State, the Texas Supreme Court held that "[t]he Legislature acting for the state has primary and plenary power to regulate public roads and streets . . . [and i]t may delegate that power to counties or municipal corporations." Id. at 741. As in City of Austin, we have before us an instance where the Legislature has empowered a governmental entity, Harris County, to acquire the property necessary to construct highways. "That grant of authority is conditioned, however, by the requirement that the utilities be reimbursed for the expense which they incur." Id. at 742. The court emphasized that a legislative act directing a particular payment must be obeyed unless it violates the Texas constitutional provision prohibiting "donation for a private purpose." A payment to a utility, the court stated, is not prohibited by the Texas Constitution so long as "the statute creating the right of reimbursement operates prospectively, deals with the matter in which the public has a real and legitimate interest, and is not fraudulent, arbitrary or capricious." Id. at

18

743.  Payment under § 251.102 of the Transportation Code to CenterPoint satisfies this standard.

First, there is no contention that § 251.102 operates retrospectively in this case -- nor could there be.  The cost was incurred long after the statute requiring payment was passed.  Second, the "public . . . has a direct and immediate interest in the relocation of utility facilities which would otherwise interfere with highway improvements."[14]  City of Austin, 331 S.W.2d at 745.  Finally, there is no evidence or contention that the statute, nor the proposed payment to CenterPoint, can be said to be "fraudulent, arbitrary or capricious".[15]  In sum, because relocation costs incurred by CenterPoint are "eligible under the law" for

---

[14] As the Texas court in City of Austin reasoned:

> It is important to remember that utility facilities are not placed in public streets merely for the convenience of private stockholders. . . . [L]ight, sewers, gas and water works are among the common necessities of modern cities, and it is a matter of common knowledge that such plants cannot be constructed and operated without running the lines and mains along or across the streets. . . . It is the interest of the public in receiving utility services which supports the right of utilities to use streets and highways for that purpose in the first place.

City of Austin, 331 S.W.2d at 744.


[15] The underlying premise of the holding in City of Austin is that "no net gain accrues to the utility from the relocation of its facilities in the manner and under the conditions prescribed by the statute."  Id. at 742.  We note that Harris County has not raised a "betterment" challenge to the relocation costs of CenterPoint.

19

reimbursement, CenterPoint is an "eligible utility facility" under § 251.102 of the Texas Transportation Code.

Accordingly, the district court's judgment for CenterPoint ordering the payment of relocation costs is affirmed.[16]

### III

On cross-appeal Centerpoint contends that the district court erred in denying its request for attorney's fees and prejudgment interest. A denial of attorney's fees is reviewed for abuse of discretion.[17] Southwestern Bell Tel. Co. v. City of El Paso, 346 F.3d 541, 550 (5th Cir. 2003). The district court's ruling on prejudgment interest is also reviewed for abuse of discretion. See Matter of Texas Gen. Petroleum Corp., 52 F.3d 1330, 1339 (5th Cir. 1995); see also Hale v. Fish, 899 F.2d 390, 404 (5th Cir. 1990) ("the fate of [] prejudgment interest is in the hands of the district court").

---

[16] CenterPoint also raises claims under the Texas and United States Constitutions arising from its franchise agreement with the City of Houston. As the merits of the case have been resolved under §§ 251.101 and 251.102 of the Texas Transportation Code, we do not reach these claims.

[17] We recognize that there are specific standards of review to be applied to the underlying findings supporting a district court's grant or denial of attorney's fees. See Southwestern Bell Tel. Co. v. City of El Paso, 346 F.3d 541, 550 (5th Cir. 2003) (holding that "[t]he district court's underlying findings of fact are subject to review for clear error and its conclusions of law are reviewed de novo"). Here, however, the district court summarily denied attorney's fees and prejudgment interest without any underlying findings, merely stating that "[a]ll other relief not expressly granted herein is denied."

"A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Ross v. Marshall, 426 F.3d 745, 763 (5th Cir. 2005). In the case at hand the district court issued a summary order denying "all other relief not expressly granted," which included both attorney's fees and prejudgment interest. Because no further discussion was provided, we are deprived of the benefit of the district court's reasoning and thus cannot conduct the required review. See, e.g., Schwarz v. Folloder, 767 F.2d 125, 133 (5th Cir. 1985) (vacating and remanding on attorney's fees noting that "[a]lthough an award of attorney's fees, like an award of costs, is committed to the discretion of the trial court and can only be reversed for an abuse of discretion, the trial court must give reasons for its decisions . . .; otherwise we cannot exercise meaningful review.") (internal citation omitted). Consequently we VACATE the judgment as it relates to prejudgment interest and attorney's fees and REMAND to allow the district court further to consider these claims and to provide analysis and reasons for such decisions as it may reach.

IV

In sum, §§ 251.101 and 251.102 of the Texas Transportation Code are the applicable statutes to resolve the issue of reimbursement presented in this case. However, we have found that the statutes are ambiguous relative to the meaning of the term "eligible utility facilities." In accordance with the prescribed

21

Texas rules of statutory construction, we have looked to the statutes that preceded codification of the Texas Transportation Code to determine that the term "eligible" describes a utility that incurs relocation costs that result from county acquisitions of highway rights-of-way authorized by statute and, second, that those relocation costs are "eligible under the law" for reimbursement. Both requirements are satisfied in this case:  Because Harris County acquired a right-of-way to create the Westpark Tollway within the meaning of § 251.101, the costs were incurred as a result of a statutorily authorized county acquisition, and because § 251.102 operates prospectively, deals with a matter in which the public has a real and legitimate interest, and is not "fraudulent, arbitrary or capricious", City of Austin, 331 S.W.2d at 743, the relocation costs are "eligible under the law" for reimbursement. Consequently CenterPoint is an "eligible utility facility" under § 251.102 of the Texas Transportation Code, and we thus affirm the award of these costs.

On CenterPoint's cross-appeal, which seeks to reverse the denial of attorney's fees and prejudgment interest, we have determined that the district court failed to provide the reasoning necessary for us to conduct the required review, and thus we vacate that portion of the judgment.

For these reasons we AFFIRM in part, VACATE in part and REMAND to the district court only to reconsider attorney's fees and

22

prejudgment interest and to provide reasons for such decisions as it may reach.

AFFIRMED in part; VACATED in part; and REMANDED.