263 S.W.3d 48 (2006)
HARRIS COUNTY TOLL ROAD AUTHORITY and Harris County, Appellants,
v.
SOUTHWESTERN BELL TELEPHONE, L.P. d/b/a SBC Texas, Appellee.
No. 01-05-00668-CV.
Court of Appeals of Texas, Houston (1st Dist.).
September 14, 2006.
*52 Bruce Powers, Houston, TX, for Appellants.
Elizabeth K. Ferrell, SBC TEXAS, Jon David Hensarling, Bellaire, TX, Amy Douthitt Maddux, Jonathan B. Smith, Baker Botts, L.L.P., Houston, TX, for Appellee.
Panel consists of Justices TAFT, HIGLEY, and BLAND.

OPINION
JANE BLAND, Justice.
In this case, we decide whether a telecommunications company or the county government must bear utility relocation costs necessitated by county road construction. The Harris County Toll Road Authority and Harris County (collectively "Harris County") contend the trial court erred in granting summary judgment for Southwestern Bell Telephone, L.P. d/b/a SBC Texas ("SBC") and in ordering Harris County to pay SBC's relocation costs. SBC asserts that Harris County's appeal is untimely. We conclude that (1) the appeal is timely; (2) though SBC is an "eligible utility facility" within the meaning of Transportation Code section 251.102, the statute does not waive Harris County's immunity from suit; and (3) SBC is not entitled to compensation under article I, section 17 of the Texas Constitution. We therefore reverse and render judgment for Harris County.

BACKGROUND
SBC provides local telephone service to customers throughout Texas, including the City of Houston and Harris County. SBC maintains underground telecommunications facilities in the public right-of-way along what used to be Westpark Road now the Westpark Tollwaypursuant to Texas Utilities Code section 181.082. See TEX. UTIL.CODE ANN. § 181.082 (Vernon 1998) ("A telephone ... corporation may install a facility of the corporation along, on, or across a public road, a public street, or public water in a manner that does not inconvenience the public in the use of the road, street, or water.").
Harris County began constructing the Westpark Tollway in 2001. To accommodate construction, Harris County required SBC to relocate its telecommunications facilities in the right-of-way along Westpark Road. SBC moved its facilities without insisting on advance payment in an effort to avoid construction delays. SBC made clear, however, that it would assert a reimbursement right against Harris County, and it eventually billed the County for its relocation costs. Harris County refused payment and this suit followed.
SBC's petition asserts two causes of action: one for inverse condemnation under article I, sections 17 and 19 of the Texas Constitution and one for reimbursement under Transportation Code section 251.102. See TEX. CONST. art. I, §§ 17, 19; TEX. TRANSP. CODE ANN. § 251.102 (Vernon 1999). After the parties filed cross-motions for summary judgment, the trial *53 court denied Harris County's motion and granted summary judgment for SBC, in an order dated October 13, 2004. The October order awards SBC "$1,494,050.97, plus all applicable pre and post-judgment interest at the maximum rate allowed by law."
Harris County moved for reconsideration in December 2004. In an order dated April 7, 2005, the trial court again denied Harris County's summary judgment motion and granted summary judgment for SBC. The April order awards SBC $1,633,537.95 and provides that the amount of prejudgment interest through April 4, 2005 is $88,667.14. The order further states that "[t]he calculation of pre-judgment interest will continue to increase at a rate of $223.77 per day starting on April 5, 2005 and running until the day the Court signs this judgment." The April order also provides that it "finally disposes of all claims of all parties and is final and appealable." This appeal followed.

STANDARD OF REVIEW
Our review of a summary judgment is de novo. Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). Under the traditional standard for summary judgment, the movant has the burden to show that no genuine issue of material fact exists and that judgment should be granted as a matter of law. TEX.R. CIV. P. 166a(c); KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex.1999). We view all evidence in a light favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. Provident Life, 128 S.W.3d at 215. When both sides move for summary judgment and the trial court grants one motion and denies the other, we consider both motions, their evidence, and their issues, and we may render the judgment that the trial court should have rendered. See CU Lloyd's of Tex. v. Feldman, 977 S.W.2d 568, 569 (Tex. 1998).

ANALYSIS

Timeliness of Appeal
As an initial matter, we consider SBC's contention that we lack jurisdiction over this appeal. SBC urges that the October 2004 order is the final judgment in the case, even though it does not state the amount or method of calculating prejudgment interest. According to SBC, Harris County filed its December 2004 motion for reconsideration after the trial court's plenary power had expired, and thus the April 2005 order rendered pursuant to that motion, from which Harris County appeals, is void, making the appeal untimely.
The time for filing a notice of appeal is jurisdictional in nature, and absent a timely filed notice of appeal or extension request, we must dismiss an appeal for lack of jurisdiction. See TEX. R.APP. P. 2, 25.1(b), 26.3; see also Verburgt v. Dorner, 959 S.W.2d 615, 617 (Tex.1997) (discussing timing requirements for filing notice of appeal). Generally, a party must file a notice of appeal within thirty days after the trial court signs the final judgment.[1]See TEX.R.APP. P. 26.1; Lehmann v. Har-Con Corp., 39 S.W.3d 191, 195 (Tex.2001) ("[T]he general rule, with a few mostly statutory exceptions, is that an appeal may be taken only from a final judgment.").
*54 "Although a judgment following a trial on the merits is presumed to be final, there is no such presumption of finality following a summary judgment...." In re Burlington Coat Factory Warehouse of McAllen, Inc., 167 S.W.3d 827, 829 (Tex. 2005) (citing Lehmann, 39 S.W.3d at 199-200).
[A] judgment issued without a conventional trial is final for purposes of appeal if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties.
Lehmann, 39 S.W.3d at 192-93. The October 2004 order does not contain any finality language. Thus, we must determine whether, based on the record, the October 2004 order disposes of all claims and parties. See id. at 195. In disposing of the parties' claims, "[a] judgment must be sufficiently definite and certain to define and protect the parties' rights, or it should provide a definite means of ascertaining such rights so that ministerial officers can carry the judgment into execution without ascertaining facts not stated in the judgment." Olympia Marble & Granite v. Mayes, 17 S.W.3d 437, 440 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (citing Stewart v. USA Custom Paint & Body Shop, Inc., 870 S.W.2d 18, 20 (Tex.1994)). "If the amount awarded by the judgment cannot be determined, the judgment is interlocutory." Id.
The October 2004 order grants SBC's summary judgment motion, denies Harris County's summary judgment motion, and awards SBC "$1,494,050.97, plus all applicable pre and post-judgment interest at the maximum rate allowed by law." SBC acknowledges that the October order does not specify the amount or method of calculating prejudgment interest, but asserts that under Olympia Marble, the amount need not be stated in the judgment "[w]hen the rate and means of calculating interest is a matter of law...." Id. at 441. According to SBC, the rate and means of calculating interest is a matter of law in this case because Finance Code section 304.104 applies. See TEX. FIN.CODE ANN. § 304.104 (Vernon Supp.2005). Under that section, prejudgment interest accrues "during the period beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed and ending on the day preceding the date judgment is rendered." Id. Section 304.104 "applies only to a wrongful death, personal injury, or property damage case." Id. § 304.101.
In determining whether the rate and means of calculating prejudgment interest is a matter of law, we look to SBC's petition, which alleges two causes of action: one for reimbursement under Transportation Code section 251.102 and one for inverse condemnation under the Texas Constitution. SBC based its summary judgment motion upon both causes of action. The October 2004 order, however, does not indicate whether it is based upon SBC's claim for reimbursement under the Transportation Code, SBC's inverse condemnation claim under the Texas Constitution, or both. Thus, we must determine whether "the rate and means of calculating [prejudgment] interest" is the same for both causes of action, such that the prejudgment interest determination is "a mere ministerial act." Olympia Marble, 17 S.W.3d at 441-42.
There are two legal sources for an award of prejudgment interest: (1) common law equitable principles and (2) an enabling statute. Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 528 (Tex.1998). However, in Johnson & Higgins, the Texas Supreme *55 Court harmonized the common law prejudgment interest accrual scheme with the Finance Code. Id. at 528-31 & n. 9; City of Houston v. Texan Land & Cattle Co., 138 S.W.3d 382, 388 (Tex.App.-Houston [14th Dist.] 2004, no pet.). Thus, regardless of whether we construe SBC's Transportation Code reimbursement claim as a "property damage case" under chapter 304 of the Finance Code, or as a claim for which the common law governs any award of prejudgment interest, such interest began accruing on the earlier of (1) 180 days after Harris County received written notice of SBC's claim or (2) the date SBC filed suit. See TEX. FIN.CODE ANN. §§ 304.101, 304.104; Johnson & Higgins, 962 S.W.2d at 528-31. The record does not indicate whether SBC sent Harris County written notice of its Transportation Code reimbursement claim; thus, prejudgment interest on that claim began accruing on the date SBC filed its petition, December 19, 2003.[2]See Olympia Marble, 17 S.W.3d at 443 (where record does not indicate whether plaintiff sent defendant written notice of its claims, prejudgment interest should be calculated from date plaintiff filed suit).
SBC's inverse condemnation claim is governed by a different rule, however. In inverse condemnation cases, "prejudgment interest begins accruing on the date of the constitutional taking." Texan Land & Cattle, 138 S.W.3d at 389; see also Whittington v. City of Austin, 174 S.W.3d 889, 907 (Tex.App.-Austin 2005, pet. denied) ("The longstanding rule in Texas condemnation cases has been that prejudgment interest begins to accrue on the date of the constitutional taking...."). A different rule applies in inverse condemnation cases because the right to prejudgment interest in such cases is based on the Texas Constitutionnot a statute or the common law. Texan Land & Cattle, 138 S.W.3d at 388 (citing State v. Hale, 136 Tex. 29, 146 S.W.2d 731, 738 (1941)). Under the constitution, a condemnee must be made whole. Id. at 388-89. Prejudgment interest is one component in making the plaintiff whole because it compensates a party for lost use of money due as damages during the lapse of time between the accrual of the claim and the date of the judgment. Id. (citing Johnson & Higgins, 962 S.W.2d at 528). "Notwithstanding this purpose, the legislative policy behind the Finance Code and the supreme court's common law rule was one of tort reform, designed to encourage settlements." Id. at 389 (citing Johnson & Higgins, 962 S.W.2d at 531-32). Thus, "[n]either Section 304.104 of the Finance Code nor the common law rule announced in Johnson & Higgins satisfy the constitutional mandate that the condemnee be made whole," and neither is applicable in inverse condemnation cases. Id.; accord Whittington, 174 S.W.3d at 907-08.[3] SBC's summary judgment *56 evidence indicates that the alleged constitutional takings began in September 2003.
As it is unclear both from the October 2004 order and the record whether the trial court found in favor of SBC based on its statutory reimbursement claim (for which prejudgment interest would begin accruing on December 19, 2003) or its constitutional inverse condemnation claim (for which prejudgment interest would begin accruing in September 2003), "the calculation of prejudgment interest is not a simple ministerial act." Olympia Marble, 17 S.W.3d at 442 (concluding that calculation of prejudgment interest is not ministerial act "if the record reveals facts that call into question the date on which prejudgment interest should accrue.... [I]n such a case, the judgment is not final."); see also H.E. Butt Grocery Co. v. Bay, Inc., 808 S.W.2d 678, 680-81 (Tex.App.-Corpus Christi 1991, writ denied) (where judgment failed to specify which of two separate legal authorities governed award of prejudgment interest and interest rate differed for each, amount of judgment was "not capable of definite ascertainment from its own terms" and therefore was not final because "the question is not which [authority the appellate court] find[s] to be applicable; the question is whether the clerk would know with certainty which one to apply"). Hence, we hold that the October 2004 order is interlocutory because it does not dispose of all claimsrather, it leaves open the amount of prejudgment interest to be awarded. Olympia Marble, 17 S.W.3d at 443; see also Burlington, 167 S.W.3d at 830 (judgment that does not dispose of all claims or contain unequivocal finality language is interlocutory). The trial court therefore had plenary power at the time it signed the April 7, 2005 order. See Fruehauf Corp. v. Carrillo, 848 S.W.2d 83, 84 (Tex.1993) (observing that trial court retains continuing control over interlocutory orders).
The April 2005 order is the final judgment in the case because it (1) calculates the amount of prejudgment interest and (2) contains the type of unequivocal finality language approved by the Texas Supreme Court in Lehmann.[4]See Lehmann, 39 S.W.3d at 206 (noting that "[a] statement like, `This judgment finally disposes of all parties and all claims and is appealable', would leave no doubt about the court's intention"); accord Burlington, 167 S.W.3d at 830. Harris County timely moved for a new trial and timely filed its notice of appeal on July 1, 2005. See TEX.R.APP. P. 26.1(a)(1) (time to file appeal extends to ninety days after trial court signs judgment if party timely moves for new trial). We therefore have jurisdiction over this appeal and turn now to the parties' *57 arguments regarding Transportation Code section 251.102.

Transportation Code Section 251.102
Transportation Code section 251.102 provides as follows: "A county shall include the cost of relocating or adjusting an eligible utility facility in the expense of right-of-way acquisition." TEX. TRANSP. CODE ANN. § 251.102 (Vernon 1999). Harris County contends the trial court erred in awarding SBC its utility relocation costs under section 251.102 because (1) section 251.102 does not waive Harris County's immunity from suit and (2) SBC is not an "eligible utility facility" within the meaning of the statute.

Eligible Utility Facility
Earlier this year, the United States Court of Appeals for the Fifth Circuit determined the meaning of the phrase "eligible utility facility" in CenterPoint Energy Houston Electric LLC v. Harris County Toll Road Authority, 436 F.3d 541 (5th Cir.2006). In that case, CenterPoint had laid its electric and gas facilities within the right-of-way along Westpark Drive. Id. at 542. When Harris County began constructing the Westpark Tollway, it required CenterPoint to relocate its facilities. Id. CenterPoint sought reimbursement of its relocation costs under Transportation Code section 251.102, but Harris County refused payment. Id. The district court rendered summary judgment for CenterPoint, holding that Transportation Code sections 251.101[5] and 251.102 required Harris County to reimburse CenterPoint's relocation costs. Id. at 543.
On appeal to the Fifth Circuit, Harris County asserted, as it does here, that CenterPoint was not an "eligible utility facility" within the meaning of section 251.102. Id. at 544. In deciding this issue, the Fifth Circuit acknowledged that Transportation Code section 251 does not define or otherwise provide guidance as to the meaning of "eligible utility facility." Id. at 545. The court therefore turned to traditional rules of statutory interpretation. See id. (observing that "`primary rule in statutory interpretation is that a court must look to the intent of the legislature and must construe the statute so as to give effect to that intent'" (quoting Union Bankers Ins. Co. v. Shelton, 889 S.W.2d 278, 280 (Tex.1994))). As legislative intent cannot be determined from the words of the statute itself, the Fifth Circuit looked to the Code Construction Act, which lists factors that may be considered in construing a statute. See id. at 545-46 (citing TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005)). These factors include, among other things, (1) the common law or former statutory provisions, including laws on the same or similar subjects and (2) the title (caption) and preamble of the statute. TEX. GOV'T CODE ANN. § 311.023(4), (7).
The Fifth Circuit first examined the title and preamble of the Transportation Act, which indicate that the Act relates "`to the adoption of a nonsubstantive revision of statutes relating to transportation.'" CenterPoint, 436 F.3d at 546-47 (quoting 1995 Tex. Sess. Law Serv. Chpt. 165, § 1.001(a) (S.B.971) (West) (now codified at TEX. TRANSP. CODE ANN. § 1.001(a) (Vernon 1999)) (emphasis added)). The court therefore concluded that Transportation Code sections 251.101 and 251.102 retain their pre-codification meanings. Id. at 547. The pre-codification versions of sections 251.101 and 251.102 were former articles 6674n-3 and 6702-1, respectively. Id. The court observed that former article 6674n-3 provides definition to the phrase "eligible utility facility," while former article *58 6702-1 applies that phrase in the context of county acquisitions. Id.
Former article 6674n-3, entitled "Costs of relocating or adjusting eligible utility facilities in acquisition of rights-of-way," provides as follows: "In the acquisition of all highway rights-of-way by or for the Texas Highway Department, the cost of relocating or adjusting utility facilities which cost may be eligible under the law is hereby declared to be an expense and cost of right-of-way acquisition." Act of May 16, 1963, 58th Leg., R.S., ch. 240, § 1, 1963 Tex. Gen. Laws 654, 654 (amended 1995) (current version at TEX. TRANSP. CODE ANN. § 224.008 (Vernon 1999)). The Fifth Circuit noted that, although this former article applies to the Texas Highway Department, it makes clear that "eligible" is a modifier of "cost." CenterPoint, 436 F.3d at 547. Former article 6702-1 of the same title states: "The county should include the cost of relocating or adjusting eligible utility facilities in the expense of right-of-way acquisition." Act of July 3, 1984, 68th Leg., 2d C.S., ch. 8, § 1, sec. 4.303, 1984 Tex. Gen. Laws 30, 53 (amended 1995) (current version at TEX. TRANSP. CODE ANN. § 251.102 (Vernon 1999)). According to the Fifth Circuit,
[w]e can only conclude that the Texas Legislature intended the term "eligible utility facilities" to be interpreted and applied consistently in each of its uses in the title. See Dallas County Cmty. College Dist. v. Bolton, 185 S.W.3d 868 (Tex.2005) ("We must interpret a statute according to its terms, giving meaning to the language consistent with other provisions in the statute."); McIntyre v. Ramirez, 109 S.W.3d 741, 745 (Tex. 2003) ("[W]e will not give an undefined statutory term a meaning that is out of harmony or inconsistent with other provisions in the statute."); Barr v. Bernhard, 562 S.W.2d 844, 849 (Tex.1978) ("[O]ne provision will not be given a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such a construction if standing alone."). Consequently, the meaning of the term used in both article 6702-1 and article 6674n-3 is the same. Thus, where a utility facility incurs relocation costs resulting from a "county acqui[sition of] real property," through the process outlined in article 6702-1... and those relocation costs are "eligible under the law," that utility is an "eligible utility facility" due county reimbursement.
CenterPoint, 436 F.3d at 547-48.
In applying the first requirement of section 251.102that the relocation costs result from a county acquisition of rights-of-way for highway constructionthe Fifth Circuit found that Harris County's activities fell "squarely within" the statutory provision. Id. at 548. Section 251.101 authorizes a county to "exercise the power of eminent domain in a municipality ... to condemn and acquire real property, a right-of-way, or an easement in public or private real property ... necessary or convenient to any road that forms or will form a connecting link in the county road system." TEX. TRANSP. CODE ANN. § 251.101 (Vernon 1999). The court noted that Harris County acquired the rights-of-way along Westpark Drive that were necessary to construct the Westpark Tollway, which is a "connecting link" between the City of Houston and the surrounding county. CenterPoint, 436 F.3d at 548. Moreover, the construction of the Westpark Tollway required CenterPoint to relocate its utility facilities. Id. at 548-49. Thus, the court found that the first requirement of section 251.102 was satisfied. Id. at 549.
The facts in the case before us are identicalHarris County acquired the *59 rights-of-way along Westpark Drive[6] so that it could construct the Westpark Tollway, which required SBC to relocate its telecommunications facilities. Hence, we likewise find that the first requirement of section 251.102 is satisfied.
The second requirement of section 251.102 is that the relocation costs incurred by the utility must be "eligible under the law." Id. To determine the meaning of this phrase, the Fifth Circuit looked to State v. City of Austin, 160 Tex. 348, 331 S.W.2d 737 (1960). Id. In that case, the Texas Supreme Court addressed the validity of a statute requiring repayment of utility relocation expenses necessitated by the improvement of a highway established as part of the National System of Interstate and Defense Highways. City of Austin, 160 Tex. at 351-52, 331 S.W.2d at 740. The court focused on the constitutionality of using public funds to reimburse a private utility's relocation expenses, and emphasized that a legislative act directing a particular payment must be obeyed unless it violates the provisions of the Texas Constitution prohibiting donations for a private purpose. Id. at 359, 331 S.W.2d at 745. According to the court, a payment to a utility company is not prohibited so long as "the statute creating the right of reimbursement operates prospectively, deals with the matter in which the public has a real and legitimate interest, and is not fraudulent, arbitrary or capricious." Id. at 356, 331 S.W.2d at 743.
Applying this test to the case before it, the Fifth Circuit found that section 251.102 does not operate retrospectively, thus satisfying the first prong. CenterPoint, 436 F.3d at 549-50. With respect to the second prong, the court observed that the "`public ... has a direct and immediate interest in the relocation of utility facilities which would otherwise interfere with highway improvements.'" Id. at 550 (quoting City of Austin, 160 Tex. at 358, 331 S.W.2d at 745). Finally, regarding the third prong, the Fifth Circuit noted that there was no evidence that the statute, or the proposed payment to CenterPoint, was "`fraudulent, arbitrary or capricious.'" Id. (quoting City of Austin, 160 Tex. at 356, 331 S.W.2d at 743). In employing this language, the Texas Supreme Court in City of Austin was primarily concerned that "no net gain accrue[] to the utility from the relocation of its facilities." City of Austin, 160 Tex. at 355, 331 S.W.2d at 742. According to the court, reimbursement of utility relocation expenses does not offend the constitutional gift prohibition so long as the utility receives only its "non-betterment costs." Id. at 355-56, 331 S.W.2d at 743.
*60 Here, there is no evidenceand Harris County does not contendthat SBC seeks anything more than its non-betterment costs. Thus, the proposed payment to SBC is not fraudulent, arbitrary, or capricious. Accordingly, like the Fifth Circuit, we hold that because the relocation costs incurred by SBC are "eligible under the law" for reimbursement, SBC is an "eligible utility facility" within the meaning of Transportation Code section 251.102.[7]CenterPoint, 436 F.3d at 550.

Governmental Immunity
Determining that SBC is an "eligible utility facility" within the meaning of Transportation Code section 251.102 is only part of the inquiry, however. The other issue we must considerand one the Fifth Circuit did not addressis whether section 251.102 creates a private right of action that waives Harris County's immunity from a suit seeking to recover funds that the County refuses to reimburse.
Sovereign immunity refers to the State's immunity from suit and liability. Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694 n. 3 (Tex.2003). Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts. Id. Governmental immunity has two components: immunity from liability, *61 which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the governmental entity altogether. Tooke v. City of Mexia, 197 S.W.3d 325, 331 (Tex., 2006). Harris County contends that it is immune from any suit brought under Transportation Code section 251.102. SBC responds that section 251.102 impliedly waives the County's immunity.
The Legislature has exclusive power to create a cause of action that waives a governmental entity's immunity. Tex. Dep't of Transp. v. City of Sunset Valley, 146 S.W.3d 637, 641 (Tex.2004). In doing so, the Legislature must clearly and unambiguously express its intent to waive governmental immunity. See TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp.2005) ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."); Tooke, 197 S.W.3d at 328 ("[I]mmunity is waived only by clear and unambiguous language."); City of LaPorte v. Barfield, 898 S.W.2d 288, 291 (Tex.1995) ("It is a well-established rule that for the Legislature to waive the State's sovereign immunity, it must do so by clear and unambiguous language.") (internal quotation omitted).
In Wichita Falls State Hospital v. Taylor, the Texas Supreme Court identified several aids to help guide a court's analysis in determining whether a particular statute waives a governmental entity's immunity. 106 S.W.3d at 697-98. Specifically, the court stated as follows:
We have on rare occasions found waiver of sovereign immunity absent "magic words," such as the State's "sovereign immunity to suit and liability is waived." Although it is more difficult to discern legislative consent under those circumstances, we have employed several aids to help guide our analysis in determining whether the Legislature has clearly and unambiguously waived sovereign immunity. First, a statute that waives the State's immunity must do so beyond doubt, even though we do not insist that the statute be a model of "perfect clarity." For example, we have found waiver when the provision in question would be meaningless unless immunity were waived.
Second, when construing a statute that purportedly waives sovereign immunity, we generally resolve ambiguities by retaining immunity.... If the text and history of the statute leave room to doubt whether the Legislature intended to waive sovereign immunity, we are less likely to find a waiver.
....
Finally, we are cognizant that, when waiving immunity by explicit language, the Legislature often enacts simultaneous measures to insulate public resources from the reach of judgment creditors. Therefore, when deciding whether the Legislature intended to waive sovereign immunity and permit monetary damages against the State, one factor to consider is whether the statute also provides an objective limitation on the State's potential liability.
Id. (internal citations omitted).
We now employ these aids to determine whether Transportation Code section 251.102 waives Harris County's immunity from suit. Section 251.102 provides that "[a] county shall include the cost of relocating or adjusting an eligible utility facility in the expense of right-of-way acquisition." TEX. TRANSP. CODE ANN. § 251.102. SBC concedes that the statute does not contain "magic words" waiving Harris County's immunity, but urges that *62 the term "shall" reflects the Legislature's intent to require counties, not only to allocate eligible utilities' relocation costs in acquiring any right-of-way, but also to pay them under pain of civil liability. See TEX. GOV'T CODE ANN. § 311.016(2) (Vernon 2005) ("`Shall' imposes a duty."). SBC posits that the Legislature presumably intended eligible utilities' reimbursement rights to be enforceable, and that the statute would be meaningless if it did not waive immunity, because there would be no means of enforcing a county's duty to allocate utility relocation expenses in the cost of acquiring a right-of-way if a county, as here, refused to remit such costs to the utility once the county allocated for them.
The Texas Supreme Court recently considered whether a similar provision of the Transportation Code, section 203.058(a), waives immunity in Texas Department of Transportation v. City of Sunset Valley, 146 S.W.3d at 640-43. In that case, the Texas Department of Transportation ("TxDOT") had closed a road located in the City of Sunset Valley to accommodate expansion of a state highway. Id. at 640. After the City constructed a substitute for the closed road at its own expense, it sued TxDOT for reimbursement under Transportation Code section 203.058(a), which provides as follows:
If the acquisition of real property, property rights, or material by the department [of transportation] from a state agency under this subchapter will deprive the agency of a thing of value to the agency in the exercise of its functions, adequate compensation for the real property, property rights, or material shall be made.
Id. at 640-41 (quoting TEX. TRANSP. CODE ANN. § 203.058(a)) (emphasis added).
The supreme court determined that section 203.058 does not waive TxDOT's immunity. Id. at 642-43. In reaching this conclusion, the court first noted that nothing in the plain language of the statute indicates that the Legislature intended to waive immunity. Id. at 642. Rather, the statute requires TxDOT to make "adequate compensation" and then outlines the accounting procedures TxDOT must use in making such compensation. Id. (internal quotation marks omitted). For instance, subsection (b) of the statute states that the compensation "shall be paid on vouchers." TEX. TRANSP. CODE ANN. § 203.058(b) (Vernon 1999). Subsection (c) indicates to which budget item compensation shall be credited. Id. § 203.058(c). Subsection (e) provides that if TxDOT and the state agency are unable to agree on an amount, the General Land Office shall determine the appropriate amount of compensation. Id. § 203.058(e).
After observing that section 203.058 does not expressly waive TxDOT's immunity, the supreme court held as follows: "That the statute imposes a financial obligation on the State does not in itself mean that the Legislature intended to create a private right of action, as evidenced by the fact that the statute expressly vests the power to determine adequate compensation in the General Land Office." Id. at 642-43. The court noted that the statute makes sense absent a waiver of immunity because it "provides a mechanism by which state agencies[8] may ensure budgetary protection when property is transferred between them." Id. at 643.
SBC urges that the supreme court's reasoning in Sunset Valley is inapplicable to the present case because the statute in *63 Sunset Valley contains a non-judicial enforcement mechanism. Though SBC is correct that, under the statutory scheme in Sunset Valley, the General Land Office determines the appropriate amount of compensation in the event of a dispute between TxDOT and the state agency, nothing in the statute empowers the General Land Office to enforce TxDOT's payment of that amount. In other words, although section 203.058 provides for an administrative mechanism to determine the appropriate amount of compensation, it does not provide for an enforcement mechanismrather, the statute is silent regarding how the state agency should proceed in the event TxDOT refuses payment. Yet, in spite of the absence of an enforcement mechanism in section 203.058, and in spite of the statute's use of the mandatory term "shall," the Texas Supreme Court nevertheless concluded that the statute does not waive TxDOT's immunity and does not create a private right of actioneven though it imposes a financial obligation on the State. See id. at 641-43.
We likewise conclude that Transportation Code section 251.102 does not waive Harris County's immunity from suitor create a private right of action for eligible utility facilities like SBCeven though it imposes a financial obligation on the County.[9] The statute merely states that a county, at the time it acquires a right-of-way to accommodate county road construction, must include the cost of relocating eligible utility facilities as part of its expense in acquiring the right-of-way. That is, the county must budget not only for the cost of acquiring the right-of-way, but it must also earmark funds to be paid to eligible utilities should they relocate their facilities to accommodate road construction. Section 251.102's requirement that funds be earmarked is a less apparent expression of a private right of action than that found lacking by the Texas Supreme Court in Sunset Valley. Compare TEX. TRANSP. CODE ANN. § 203.058(a) ("[A]dequate compensation for the real property... shall be made.") (emphasis added) with id. § 251.102 ("A county shall include the cost of relocating ... an eligible utility facility in the expense of right-of-way acquisition.") (emphasis added).
Such an interpretation, which gives meaning to the statute absent a waiver of immunity, logically follows from examining the history of the statute. Counties have statutory authority to expend funds in acquiring rights-of-way and other real property interests necessary to accommodate county road construction. See Act of Apr. 28, 1959, 56th Leg., R.S., ch. 257, § 1, 1959 Tex. Gen. Laws 566, 566 (amended 1995) (current version at TEX. TRANSP. CODE ANN. § 251.101 (Vernon 1999)). Under former article 6674q-4, *64 however, expenditure of county funds for improvement or construction of the state highway system was prohibited, except for the furnishing of rights-of-way. See Hardin County v. Trunkline Gas Co., 311 F.2d 882, 884 (5th Cir.1963) (quoting former article 6674q-4 ("No further improvement of said [state highway] system shall be made with the aid of or with any moneys furnished by the counties except the acquisition of right-of-ways which may be furnished by the counties, their subdivisions or defined road districts.")), vacated 375 U.S. 8, 84 S.Ct. 49, 11 L.Ed.2d 38, remanded to 330 F.2d 789 (5th Cir.1964). In Hardin County, the Fifth Circuit held that former article 6674q-4 prevented Hardin County from legally obligating itself to pay for certain pipeline adjustments necessary to accommodate state highway construction. See id. at 883-85.
After the Fifth Circuit decided Hardin County, the Legislature enacted former article 6674n-3, which provides that "[i]n the acquisition of all highway rights-of-way by or for the Texas Highway Department, the cost of relocating or adjusting utility facilities which cost may be eligible under the law is hereby declared to be an expense and cost of right-of-way acquisition." Act of May 16, 1963, 58th Leg., R.S., ch. 240, § 1, 1963 Tex. Gen. Laws 654, 654 (amended 1995) (current version at TEX. TRANSP. CODE ANN. § 224.008 (Vernon 1999)). The article's emergency provision states that it is necessary "to clarify existing law as to the proper classification of costs incurred for the relocation or adjustment of utility facilities as a part of the acquisition of right-of-way." Act of May 16, 1963, 58th Leg., R.S., ch. 240, § 4, 1963 Tex. Gen. Laws 654, 654. Twenty years later, when the Legislature enacted section 4.303 (the predecessor to Transportation Code section 251.102), it expressly referenced article 6674n-3 in the new law. See Act of May 20, 1983, 68th Leg., R.S., ch. 288, § 1, sec. 4.303, 1983 Tex. Gen. Laws 1431, 1489 ("Section 4.303. COST OF RELOCATING OR ADJUSTING ELIGIBLE UTILITY FACILITIES IN RIGHT-OF-WAY ACQUISITION. The county should include the cost of relocating or adjusting eligible utility facilities in the expense of right-of-way acquisition. (V.A.C.S. Art. 6674n-3.)"). The Legislature subsequently codified section 4.303, without substantive change, as Transportation Code section 251.102. Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, secs. 1.001(a), 251.102, 1995 Tex. Gen. Laws 1025, 1031, 1159 (codified at TEX. TRANSP. CODE ANN. § 251.102).
Thus, the legislative history reveals that, although counties were prohibited from expending resources on state highway construction, they were given statutory authority to expend county funds to acquire rights-of-way to accommodate county road construction. The passage of section 251.102 merely clarified that, at the time a county acquires a right-of-way, as part of the expense of right-of-way acquisition, the county should earmark funds to reimburse eligible utility facilities for any relocation expenses they incur as a result of the county road construction.
By its plain terms, the statute applies only to the point in time when a county budgets for the expense of right-of-way acquisition, providing guidance as to how a county should classify the costs associated with acquiring a right-of-waythe statute says nothing about an eligible utility's right to later sue the county to recover its relocation expenses. Nothing in the legislative history indicates that the Legislature intended to waive counties' immunity from suit. Accordingly, because "the text and history of the statute leave room to doubt whether the Legislature intended to waive sovereign immunity," and because the statute has meaning absent a waiver of *65 immunity, we hold that section 251.102 does not waive Harris County's immunity from suit.[10]Wichita Falls, 106 S.W.3d at 697.
SBC alternatively contends that, under Reata Construction Corp. v. City of Dallas, Harris County waived its immunity by asserting a claim for attorney's fees and by seeking a declaratory judgment. No. 02-1031, 2004 WL 726906 (Tex. Apr.2, 2004) (per curiam) ("Reata I"), withdrawn on reh'g, 197 S.W.3d 371 (Tex., 2006). After we heard oral argument in this case and after the parties filed their supplemental briefs on the issue of governmental immunity, the Texas Supreme Court withdrew Reata I and issued a new opinion in its stead. See Reata Constr. Corp. v. City of Dallas, 197 S.W.3d 371 (Tex., 2006) ("Reata II"). In Reata II, the supreme court clarified that a governmental entity that brings suit against a private entity does not have immunity as to the private entity's claims that are "germane to, connected with, and properly defensive to the [governmental entity]'s claims, to the extent [the private entity]'s claims offset those asserted by the [governmental entity]." Id. 197 S.W.3d at 373 (emphasis added). The court noted that, generally, a lack of immunity hampers governmental functions by requiring tax resources to be used for defending lawsuits and for paying judgments, rather than using those resources for their intended purposes. Id. at 375. The court reasoned, however, that "if the governmental entity interjects itself into or chooses to engage in litigation to assert affirmative claims for monetary damages, the entity will presumably have made a decision to expend resources to pay litigation costs." Id. Thus, "[i]f the opposing party's claims can operate only as an offset to reduce the government's recovery, no tax resources will be called upon to pay a judgment, and the fiscal planning of the governmental entity should not be disrupted." Id.
Here, SBCnot Harris Countyinitiated suit to recover its relocation expenses. In the prayer of its response to SBC's summary judgment motion (and again in its motion for reconsideration), Harris County asked for its attorney's fees in defending the suit, and for a declaratory judgment stating that it is not liable to SBC. Under these circumstances, we cannot characterize SBC's claim for reimbursement of its relocation expenses as an offset to Harris County's derivative claim for attorney's fees, within the meaning of Reata II. Accordingly, we hold that Harris County did not waive its immunity by seeking attorney's fees and a declaratory judgment.

* * *
Because nothing in the text or history of Transportation Code section 251.102 indicates that the Legislature intended to waive governmental immunity by creating a private right of action for entities like SBC, and because Harris County has not otherwise waived its immunity from suit, we hold that SBC may not seek reimbursement of its relocation expenses under section 251.102.

Inverse Condemnation
Though governmental immunity bars SBC's claim for reimbursement under *66 Transportation Code section 251.102, "the doctrine [of sovereign immunity] does not shield the State from an action for compensation under the takings clause." Gen. Servs. Comm'n v. Little-Tex Insulation Co., 39 S.W.3d 591, 598 (Tex.2001); see also Steele v. City of Houston, 603 S.W.2d 786, 791 (Tex.1980) ("The Constitution itself is the authorization for compensation for the destruction of property and is a waiver of governmental immunity for the taking, damaging or destruction of property for public use."). We therefore consider whether the trial court properly granted summary judgment for SBC on its inverse condemnation claim.
Harris County contends the trial court erred in determining that a constitutional taking has occurred because SBC does not have a vested property interest in the public right-of-way along Westpark Road where its telecommunications facilities are located. Harris County acknowledges that Utilities Code section 181.082 gives telecommunications companies the right to install and maintain lines over, across, or along a public road, but urges that the statute does not grant such companies an easement or other ownership interest in the real property on which their lines are located, and therefore does not entitle them to compensation under article I, section 17 of the Texas Constitution when they must move their lines to accommodate road construction. We agree.
Article I, section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person...." TEX. CONST. art. I, § 17. Whether particular facts are enough to constitute a taking is a question of law. Little-Tex, 39 S.W.3d at 598. To recover on an inverse condemnation claim, a property owner must establish that (1) the State or other governmental entity intentionally performed certain acts (2) that resulted in the taking, damaging, or destruction of its property (3) for public use. Lethu, Inc. v. City of Houston, 23 S.W.3d 482, 485 (Tex.App.-Houston [1st Dist.] 2000, pet. denied). The parties do not dispute that Harris County intentionally requested that SBC move its facilities to accommodate construction of the Westpark Tollway, a public project. Rather, the parties disagree about whether SBC has a "vested property interest" sufficient to trigger article I, section 17. See City of Houston v. Northwood Mun. Util. Dist. No. 1, 73 S.W.3d 304, 311 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) ("[A] plaintiff asserting a claim under article I, section 17 must show that it has a `vested' property interest."). Harris County asserts that SBC does not have a vested property interest in the public right-of-way on which its facilities are located; SBC maintains that it does.[11]
The "long-established common law principle [requires] that a utility forced to relocate from a public right-of-way must do so at its own expense." Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co. of Va., 464 U.S. 30, 34, 104 S.Ct. 304, 307, 78 L.Ed.2d 29 (1983). The same rule applies in Texas: "[I]t is clear that [utilities may] be required to remove at their own expense any installations owned by them and located in public rights of way whenever such relocation *67 is made necessary by highway improvements." City of Austin, 160 Tex. at 353, 331 S.W.2d at 741, quoted in CenterPoint, 436 F.3d at 543.[12] This is because
[t]he main purposes of roads and streets are for travel and transportation, and while public utilities may use such roads and streets for the laying of their... telephone ... lines, ... such uses are subservient to the main uses and purposes of such roads and streets.
....
... [Utilities are] charged with the knowledge that if [they see] fit to lay [their] lines in public roads, [they do] so subject to reasonable regulation by either the County or the City, as the case might be. [Utilities are] bound to realize that these roads or streets ... have to be maintained and sometimes improved by the proper governmental authority, and that [their] right to use such public ways [i]s subservient to the right and duty of the proper governmental authority to maintain and improve these roads or streets so that they might best serve the main purposes for which they [a]re intended, that of travel and transportation.
City of San Antonio v. Bexar Metro. Water Dist., 309 S.W.2d 491, 492-93 (Tex.Civ. App.-San Antonio 1958, writ ref'd).
The general rule is altered when the utility required to relocate holds a pre-existing ownership interest, such as an easement, in the property from which the utility facilities were relocated. CenterPoint, 436 F.3d at 543 n. 3. Thus, if a utility company acquires an easement over private land and is later asked to move its lines from the easement to accommodate road construction once the private land is annexed into a city, the city must reimburse the utility for its relocation costs under article I, section 17 of the Texas Constitution. City of Grand Prairie v. Am. Tel. & Tel. Co., 405 F.2d 1144, 1145 (5th Cir.1969); see also Magnolia Pipe Line Co. v. City of Tyler, 348 S.W.2d 537, 543 (Tex.Civ.App.-Texarkana 1961, writ ref'd) ("Here the pipe line easements were private easements acquired by Magnolia about 30 years ago and the pipe line was constructed under rural wooded farm land and did not cross under any existing highway, road or street.... While undoubtedly the police power of a city is vast, ... it is also clear that such power [to require Magnolia to lower its pipe line so the street could be paved after annexation] must be validly exercised .... [W]e hold that the City under such circumstances could not in the guise of its police power take or damage Magnolia's easements without paying Magnolia adequate compensation therefor under Art. I, Sec. 17, of our State Constitution.").
SBC does not have an easement along Westpark Road; instead, it placed its telecommunications facilities in the public right-of-way along Westpark Road pursuant to Utilities Code section 181.082. See TEX. UTIL.CODE ANN. § 181.082 (Vernon 1998). That provision permits "[a] telephone... corporation [to] install a facility of the corporation along, on, or across a public road ... in a manner that does not inconvenience the public in the use of the road...." Id. Yet "a right claimed to fall under the protection of [article I, section 17] of the Texas Constitution must be something more than a mere expectancy based upon an anticipated continuance of an existing law." Northwood, 73 S.W.3d *68 at 311 (citing City of Dallas v. Trammell, 129 Tex. 150, 101 S.W.2d 1009, 1013-15 (1937)). SBC has the right to lay its lines in the public right-of-way along Westpark Road only because the Texas Legislature has granted it that right. That the Legislature has authorized SBC to make use of a public right-of-way does not mean SBC has somehow acquired a vested property interest in the right-of-way akin to an easement or leasehold.[13]See id. at 310 (after surveying Texas caselaw, concluding that fee simple titles, leaseholds, and easements are generally found to be vested property interests deserving of protection under article I, section 17). Accordingly, we agree with the Fifth Circuit that SBC "has no tangible property rights in the land from which it was required to move its utility facilities." CenterPoint, 436 F.3d at 543 n. 3 (where CenterPoint had placed its electric and gas facilities within right-of-way along Westpark Drive and was required to move those facilities to accommodate construction of Westpark Tollway, observing that CenterPoint had no tangible property rights in right-of-way); see also W. Union Tel. Co. v. Tarrant County, 450 S.W.2d 763, 764-66 (Tex. Civ.App.-Fort Worth 1970, writ ref'd n.r.e.) (where Western Union placed its telegraphic facilities in city street pursuant to predecessor to Utilities Code section 181.082 and sued for relocation expenses when county acquired and closed street on which its facilities were located, holding that "[t]he long duration of [Western Union]'s free use of the city streets does not ripen into a vested compensable right in the street.... The fact that the public street in question was closed and diverted to another public use pursuant to ... the authorized actions of the City and County cannot have the effect of transforming [Western Union]'s permissive right under [the predecessor to section 181.082] into a vested right.").
*69 We conclude that SBC does not have a vested property interest in the public right-of-way along Westpark Road for purposes of asserting a violation of article I, section 17 of the Texas Constitution.

Conclusion
We conclude that (1) Harris County's appeal is timely; (2) though SBC is an "eligible utility facility" within the meaning of Transportation Code section 251.102, the statute does not waive Harris County's immunity from suit; and (3) SBC is not entitled to compensation under article I, section 17 of the Texas Constitution. We therefore reverse and render judgment for Harris County.[14]
NOTES
[1] If a party timely moves for a new trial, to modify or reinstate the judgment, or requests findings of fact and conclusions of law following a bench trial, the time to file an appeal extends to ninety days after the trial court signs the judgment. See TEX.R.APP. P. 26.1(a)(1)-(4).
[2] There is no record evidence of any settlement offers that would have implicated Finance Code section 304.105. See TEX. FIN. CODE ANN. § 304.105 (Vernon Supp.2005) (settlement offer tolls accrual of prejudgment interest).
[3] SBC recognizes the holdings in Texan Land & Cattle and Whittington, but "respectfully disagrees that there is a separate basis for prejudgment interest in a condemnation case." SBC bases its argument on City of Houston v. Wolfe, a "writ refused" condemnation case, in which SBC asserts our sister court applied "common-law equitable prejudgment interest concepts." 712 S.W.2d 228 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd). Wolfe is distinguishable because it involves the compounding of prejudgment interestnot the accrual date for prejudgment interest. Id. at 229-30. Moreover, Wolfe pre-dates the Texas Supreme Court's decision in Johnson & Higgins, in which the court held that section 6 of article 5069-1.05, the predecessor to Finance Code sections 304.101 and 304.104, "means what it says: statutory pre-judgment interest applies only to wrongful death, personal injury, and property damage cases." Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 528-30 & n. 9 (Tex. 1998). In so holding, the court observed that section 7 of article 5069-1.05, the predecessor to Finance Code section 304.201, "specifically allows for prejudgment interest in condemnation cases." Id. The court remarked, "Surely if section 6 were applicable to all judgments, the addition of section 7 would have been superfluous." Id. at 530. We therefore reject SBC's assertion that condemnation cases and property damage cases are governed by the same principles. See City of Houston v. Texan Land & Cattle Co., 138 S.W.3d 382, 389 n. 5 (Tex. App.-Houston [14th Dist.] 2004, no pet.) (recognizing that section 304.201, which establishes interest rate and frequency of compounding for condemnation cases, but does not provide accrual date, falls outside scope of section 304.104); accord Whittington v. City of Austin, 174 S.W.3d 889, 907-08 (Tex. App.-Austin 2005, pet. denied).
[4] The April 2005 order states that "[t]his ORDER finally disposes of all claims of all parties and is final and appealable."
[5] Transportation Code section 251.101 provides a means for counties to acquire property to build or improve roadways. See TEX. TRANSP. CODE ANN. § 251.101 (Vernon 1999).
[6] Harris County asserts that there is no evidence of right-of-way acquisition in this case. It points out that city streets and county roads in Texas are state property; thus, it contends that "[s]ince the rights-of-way in question were already owned by the State there was no need for Harris County to acquire them in order to construct the Westpark Tollway." Harris County did not present this argument to the trial court; instead, it raises this argument for the first time in its reply brief. As such, we need not consider it. See Yazdchi v. Bank One, Tex., 177 S.W.3d 399, 404 n. 18 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) (refusing to consider arguments made for first time in reply brief); Four Bros. Boat Works v. S & SF, Inc., 55 S.W.3d 12, 17-18 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (in summary judgment context, refusing to consider argument not raised in trial court). In any event, Harris County's argument flatly contradicts both the position it took in the district court in CenterPoint, as well as what the Fifth Circuit found to be obvious. See CenterPoint Energy Houston Elec. LLC v. Harris County Toll Rd. Auth., 436 F.3d 541, 544 n. 5 (5th Cir.2006). According to the court, "Harris County clearly exercised some sort of process or authority that passed control or ownership over the rights-of-way at issue from the City of Houston to Harris County. Thus Harris County `acquire[d] ... a right-of-way' within the meaning of § 251.101." Id.
[7] Harris County contends, as it did in CenterPoint, that there is a conflict between the general law of the Transportation Code and the Harris County Road Law, which is a special law enacted by the Legislature in 1913 that provides a mechanism by which counties may acquire property to construct roadways. See Act of Mar. 5, 1913, 33rd Leg., R.S., ch. 17, 1913 Tex. Spec. Laws 64. Harris County cites City of Piney Point Village v. Harris County, 479 S.W.2d 358 (Tex.Civ.App.-Houston [1st Dist.] 1972, writ ref'd n.r.e.), for the proposition that if a special law and a general law conflict, the special law controls. Id. at 365. While we agree with this general proposition, like the Fifth Circuit, we find Harris County's specific argument to be without merit. See CenterPoint, 436 F.3d at 544 n. 4. As a preliminary matter, we note that it is unclear whether the Harris County Road Law applies to property within the City of Houston. See City of Piney Point Village, 479 S.W.2d at 365 (observing that, by its express terms, Harris County Road Law applies to county roads that connect with main roads leading into City of Houston, and declining to pass on whether same rule would apply to roads within City of Houston). We need not decide this issue, however, because Harris County's contention fails in any event. Through a convenient sleight of hand, Harris County uses the term "Road Law" to refer interchangeably to both the Harris County Road Law itself and the regulations promulgated by the county pursuant to the Harris County Road Law. As the Fifth Circuit noted, however, there is no conflict between the provisions of the Transportation Code and the provisions of the Harris County Road Law because the latter is silent on the issue of who must bear utility relocation costs. See CenterPoint, 436 F.3d at 544 n. 4. Thus, City of Piney Point Village's pronouncement that the Harris County Road Law controls to the extent of any conflict with the general law is inapplicable here. The alleged "conflict" arises only when we look to the regulations promulgated by the county pursuant to the Harris County Road Law. One of these regulations provides that, in the event any facility interferes with the construction of any county road, the person in charge of the facility must bear the cost and expense of any change or alteration. See Rules of Harris County, Texas for the Construction of Facilities within Harris County Road Rights-of-Way § 8. We agree with the Fifth Circuit that the county regulations promulgated pursuant to the Harris County Road Law are not part of the Road Law. See CenterPoint, 436 F.3d at 544 n. 4. In fact, as the Fifth Circuit pointed out, to the extent the county regulation conflicts with section 251.102 of the Texas Transportation Code, it appears to be invalid. Id. Harris County has not directed us to any authority holding that a county rule prevails over a general state statute in the event of a conflict between the two. Thus, we reject Harris County's assertion that the Harris County Road Law changes the outcome of this case.
[8] The court alternatively concluded that the City of Sunset Valley is not a "state agency" within the purview of section 203.058. Tex. Dep't of Transp. v. City of Sunset Valley, 146 S.W.3d 637, 643 (Tex.2004).
[9] SBC likens this case to Texas Workers' Compensation Commission v. Texas Builders Insurance Co., in which the Austin Court of Appeals held that a statute giving insurance carriers a right of reimbursement against the government necessarily waived the government's immunity. 994 S.W.2d 902, 904, 906-07 (Tex.App.-Austin 1999, pet. denied). The statute at issue in that case, Labor Code section 410.205(c), provides as follows: "`If the court of last resort in the case finally modifies or reverses an appeals panel decision awarding benefits, the insurance carrier who has paid benefits as required by this section may recover reimbursement of any benefit overpayments from the subsequent injury fund.'" Id. at 904 (quoting TEX. LAB. CODE ANN. § 410.205(c)). Section 410.205(c) is distinguishable from the statute at issue in the present case for two reasons: (1) it creates a private right of action for a specific group of individuals (i.e., insurance carriers who have overpaid benefits "may recover reimbursement") and (2) it specifies the fund from which the government must make payment. Id. Transportation Code section 251.102, the statute under which SBC purports to sue, does neither.
[10] The bill analysis on which SBC relies is not to the contrary. It states in its entirety that the statute "[r]equires reimbursement of cost of relocating or adjusting eligible utility facilities in the cost of right-of-way acquisition." BLAKE, BILL ANALYSIS, Tex. S.B. 148, 68th Leg., R.S. (1983). The bill analysis says nothing about the Legislature's intent to waive governmental immunity or a utility's right to sue a county to obtain reimbursement.
[11] We note that the issue before us does not arise often. See City of Houston v. Northwood Mun. Util. Dist. No. 1, 73 S.W.3d 304, 310 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) ("It is not surprising that most article I, section 17 plaintiffs are the fee owners of the property they claim was taken or damaged; thus, whether the plaintiff has a sufficient property interest is usually not at issue.").
[12] City of Austin is the foundational Texas case recognizing the common law rule that utilities must bear their own relocation costs. CenterPoint, 436 F.3d at 549 n. 12; see also Benbrook Water & Sewer Auth. v. City of Benbrook, 653 S.W.2d 320, 323 (Tex.App.-Fort Worth 1983, no writ) (recognizing City of Austin as "leading case" in this area).
[13] Relying on City of Fort Worth v. Southwestern Bell Telephone Co., 80 F.2d 972 (5th Cir. 1936), SBC characterizes its interest in the right-of-way along Westpark Road as "easement-like." In City of Fort Worth, the Fifth Circuit held that the Southwestern Bell Telephone Company acquired a taxable property interest when it, acting "upon the faith of [the predecessor to Utilities Code section 181.082,] invested its money by placing its fixtures on and in the streets of Fort Worth." Id. at 975. The court observed that "[w]hen ... the franchise to use the streets is acted on by appropriating permanently definite portions of them for the support of poles and overhead wires, and for the reception of underground cables, a located right to use definite lands for these purposes arises which excludes use otherwise to the extent of the physical occupation, and which may not inappropriately be termed an easement, a property right in that land." Id. at 976. Thus, the court stated, "[i]f the right to maintain the company's poles, wires, and conduits on the streets of Fort Worth is property for purposes of protection, it is property for purposes of taxation no matter by what name it should rightly be called." Id. at 975. City of Fort Worth is distinguishable because it involves taxation not inverse condemnation. See W. Union Tel. Co. v. Tarrant County, 450 S.W.2d 763, 766 (Tex.Civ.App.-Fort Worth 1970, writ ref'd n.r.e.) (where Western Union placed its telegraphic facilities in city street pursuant to predecessor to Utilities Code section 181.082 and sued for relocation expenses when county acquired and closed street on which its facilities were located, noting that authority Western Union cited "involving the right of a city to levy taxes on existing lines and street use" was not on point). Moreover, the court in City of Fort Worth expressly recognized that the predecessor to section 181.082 at issue in that case reserved "a supervision through the municipality as to the placing and alteration of the [utility's] fixtures." City of Fort Worth, 80 F.2d at 976. The court noted that this condition in the statute did not prohibit taxation, but merely reserved the municipality's right to exercise its police power "when the public safety or convenience requires it." Id. The court did not opine whether the municipality, in exercising its police power, would be required to compensate a utility for the costs associated with altering its fixtures under the Takings Clause of the Constitution.
[14] If a trial court lacks subject-matter jurisdiction, we generally are to vacate the trial court's judgment and dismiss the appeal. See TEX.R.APP. P. 43.2(e). Here, however, we and the trial court have jurisdiction because SBC asserts an inverse condemnation claim, against which Harris County is not immune. We therefore render judgment. See TEX.R.APP. P. 43.3 ("Rendition Appropriate Unless Remand Necessary"); Sunset Valley, 146 S.W.3d at 640, 648 (reversing and rendering after determining, among other things, that Transportation Code section 203.058(a) does not waive TxDOT's immunity and TxDOT was not liable for unconstitutional taking).